**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| SIMEUS FOODS INTERNATIONAL, INC., § § | |
|    Plaintiff, § § | |
| v. § | Civil Action No. 3:08-CV-2238-O (BF) |
| § | |
| MARTEK LLC d/b/a/ MODERN FOODS and ACORN CAPITAL LLC d/b/a/ MODERN FOODS, § § § | |
|    Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred the Motion to Stay and Compel Arbitration of Defendants Martek LLC ("Martek") and Acorn Capital LLC ("Acorn"), filed February 3, 2009 [doc. 5], to the United States Magistrate Judge for hearing, if necessary, and recommendation or determination. Martek and Acorn are doing business as Modern Foods ("Defendants").

This Court held a hearing on June 12, 2009. After considering the briefs, the oral arguments of the parties, the law, and the record, the Court announced that written findings and conclusions would follow and would include the recommendation that the District Court: (1) grant Defendants' Motion to Compel Arbitration and (2) deny Defendants' Motion to Stay this proceeding pending arbitration and dismiss the case without prejudice.

Defendants contend that under §§ 3 and 4 of the Federal Arbitration Act ("FAA"), the parties' contract dispute should be resolved by arbitration as required by their written Supply Agreement entered August 8, 2002 ("Agreement"). *See* 9 U.S.C. §§ 1-16, 201-208 (1982). Simeus Foods International, Inc. ("Plaintiff") responds that in a series of e-mails on January 16, 2008, the parties agreed to terminate the Agreement and reached an entirely new agreement ("2008

Agreement"). Plaintiff contends that the 2008 Agreement renders the arbitration clause between the parties null and void. Defendants, on the other hand, contend that the very broad Arbitration Clause in the Agreement is applicable to Plaintiff's Original Petition which was removed here and to Defendant's Counterclaim for breach of the Agreement.

## Background

Plaintiff produces customized food products for sale to national restaurant chains, institutions, and industrial accounts such as Modern Foods. In 2002, Defendants contracted with Plaintiff to produce a precooked breakfast sausage known as Lanky Links and agreed that any unresolved disputes that arose in connection with the Agreement would be submitted to final and binding arbitration.

Under the Agreement, Plaintiff produced and packaged the Lanky Links, and then shipped them directly to Defendants' distributors. Plaintiff then invoiced Defendants, and Defendants payed Plaintiff within an agreed-upon period of time. Plaintiff and Defendants successfully conducted business under the Agreement for years before the present dispute arose.

## Standard of Review

Section 2 of the FAA provides that the Act applies where there is "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction , , , ." 9 U.S.C.A. § 2. The Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements. . . ." *City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 527 (5th Cir. 1983) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). Courts must address questions of arbitrability with a healthy regard for the federal policy favoring arbitration. *Algernon Blair*, 721

F.2d at 528. The FAA establishes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." *Id*. (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.)

The question of arbitrability is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83 (2002) (quoting *AT & T Techs., Inc. v. Commc'ns Workers,* 475 U.S. 643, 649 (1986)). This Court must determine whether Plaintiff's claims are referable to arbitration. *See Algernon Blair*, 721 F.2d at 528.

### **Findings and Conclusions**

In early 2008, the parties began to have disputes under the Agreement. Plaintiff sent Defendants a demand letter contending that Defendants breached the Agreement by failing to pay twenty-three invoices for food products delivered pursuant to the Agreement. On January 16, 2008, Defendants sent Plaintiff an e-mail acknowledging the demand letter, explaining its problems with payment, and countering that the demand letter was a material breach of the Agreement. (Pl.'s Resp., Ex. A.) In an attempt to resolve the disputes and end the business relationship amicably, Defendants outlined five proposals: (1) Defendants would become current on payments and maintain current payments within the terms of the Agreement; (2) Plaintiff would provide a last shipment of 24,00 pounds of product; (3) Plaintiff would give proper notice of termination under the Agreement; (4) the parties would conduct an orderly transition to another provider that would not interrupt Defendants' Wal-Mart business; and (5) Plaintiff would ship any remaining materials to another manufacturer. (*Id*.) Plaintiff responded by giving 60 day notice of termination of the Agreement

3

and accepting the first four terms outlined in the e-mail. Defendants replied that Plaintiff's response was acceptable. The 2008 Agreement was entered January 16, 2008, but the notice of termination of the Agreement was not effective until March 17, 2008. (*Id.*)

Plaintiff sent Defendants a second demand letter on July 29, 2008, demanding that Defendants pay around $70,000, for outstanding invoices, packaging costs, and packaging storage costs. (Defs.' App., Ex. D.) The demand letter stated that if the amount demanded was not paid within ten days from the date of the letter, Plaintiff intended to exercise any and all rights and remedies available to it under the contract including, but not limited to, filing suit to collect the amount, pre-and post-judgment interest, attorneys' fees and court costs. (*Id.*) The 2008 Agreement has no provision for arbitration, nor does it have a provision that cancels the arbitration clause under the Agreement. (Pl's. Resp., Ex. A.) Further, the Agreement was attached to the demand letter which refers generally to "a contract" and makes a claim for payment of invoices for food products delivered pursuant to "that contract," without specifying either the Agreement or the 2008 Agreement. (Defs.' App., Ex. C.) Moreover, the invoices attached both to the demand letter and to the Complaint in this case are for product ordered before the 2008 Agreement was terminated, specifically January 2, 2008 through January 11, 2008.

Defendants responded by letter on or around September 18, 2008, setting forth Defendants' claims and requesting that the parties meet "under Section 8.9 of the Agreement" "in Indianapolis, Indiana, with individuals who have decision-making authority regarding the dispute to attempt in good faith to negotiate a resolution of the dispute prior to pursuing other available remedies." (Defs.' App., Ex. C.) Defendants further quoted from the Arbitration Agreement: " If, within twenty (20) days after such meeting, the parties have not succeeded in negotiating a resolution of

4

the dispute, such dispute may be submitted to final and binding arbitration by either party under the ten current commercial rules and regulations of the American Arbitration Association (the "AAA"). (*Id.*)  Defendants continued to try to schedule a meeting between the parties, but Plaintiff never agreed to meet with Defendants, pursuant to Section 8.9 of the Agreement. (Defs.' App., Ex. A.) On November 12, 2008, Plaintiff filed suit in the 413th District Court, Johnson County, Texas, and Defendants timely removed the suit to this Court based upon diversity of citizenship. 28 U.S.C. § 1332(a).

## Analysis

Plaintiff argues that this dispute is not arbitrable under the Agreement because Plaintiff has not based its breach of contract action on the Agreement, but rather is claiming breach of contract under the 2008 Agreement.  Even if the Court assumes that Plaintiff's claims are based entirely upon the 2008 Agreement and not upon the Agreement, that fact is not determinative of whether Plaintiff's claims are arbitrable.  *See Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990); *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 93 (4th Cir. 1996); *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1461-62 (10th Cir. 1995) (holding that although agreement did not contain an arbitration clause, arbitration provision in other agreements broad enough to encompass dispute).  The determinative issue is whether the arbitration clause in the Agreement applies to the claims contained in Plaintiff's petition.

Similarly, Plaintiff's contention that this dispute is not arbitrable because the 2008 Agreement is a "novation" is without merit.  Broad arbitration clauses are not limited to claims that literally "arise under the contract," but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute.  *See J.J. Ryan*

*& Sons v. Rhone Poulenc Textile*, 863 F.2d 315, 321 (4th Cir. 1988); *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir.1998). A court's determination of whether the parties agreed to arbitrate the dispute in question involves two considerations: (1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Pennzoil Exploration & Prod. Co. v. Ramco*, 139 F.3d 1061, 1065 (5th Cir. 1998).

Plaintiff admits that it entered into the Agreement and that a valid agreement between the parties existed. The crux of Plaintiff's response opposing arbitration is that the Agreement (including the Arbitration Clause) is rendered invalid by the Agreement's termination. Defendants respond that the arbitration clause survived the termination of the Agreement. Under substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (citation omitted). An arbitration clause survives termination unless the arbitration clause itself provides to the contrary. *See Nolde Bros., Inc. v. Local No. 358*, 430 U.S. 243, 252-53 (1977). In *Nolde Bros*., the United States Supreme Court explained that in the absence of a contrary indication "there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." *Id*. at 252. Any other holding would permit one party to cut off all arbitration of claims relating to or in connection with a contract, simply by terminating the existing contract.

In this case the Agreement not only does not provide that the arbitration clause terminates with the Agreement, its provisions specifically provide to the contrary. Regarding "Severability" the Agreement provides: "Should any provision contained in this Agreement be held to be unenforceable or invalid, the remaining provisions shall be given full effect" (§ 8.7.). Moreover, the Agreement provides with respect to "Termination" that: "All provisions of this Agreement which

6

by their nature must survive termination in order to achieve the fundamental purpose of this Agreement shall survive any termination of this Agreement" (§ 8.8). Additionally, the Agreement provides that: (1) "Neither expiration or termination of this Agreement shall affect the rights or responsibilities of the parties hereunder" (§ 5.5). Further, the Agreement provides a forty-day waiting period before arbitration can be compelled (§ 8.9), but the Agreement may be terminated after a thirty-day waiting period (§ 5.2). A party could circumvent arbitration even after it had been requested by simply terminating the Agreement. The Agreement clearly indicates the intent of the parties that the arbitration clause not terminate automatically with termination of the Agreement. Termination of the Agreement in this case did not terminate the parties' duties under the arbitration clause of the Agreement. Plaintiff's argument that survival of the arbitration clause in the Agreement would create precedent for arbitration agreements to continue forever is without merit. A simple statement in the 2008 Agreement terminating the arbitration clause would have shown the parties intent after termination of the Agreement not to arbitrate disputes "relating to or in connection with the Agreement."

Having determined that a valid and enforceable arbitration agreement exists between the parties, the Court must decide whether the dispute in question falls within the scope of that arbitration agreement. The arbitration clause in the Agreement is broad. The arbitration clause does not specify that only disputes that arise under the Agreement are arbitrable. To be arbitrable a dispute must simply "relate to" or be "in connection with" the Agreement. Plaintiff is suing Defendants to recover a money judgment for the unpaid invoices that resulted from orders placed and product shipped under the Agreement. Plaintiff's claims clearly relate to the Agreement and are arbitrable under the Agreement's arbitration clause. Without the Agreement, the parties would

7

not have executed the 2008 Agreement. Additionally, Defendants counterclaim for damages for Plaintiff's alleged breaches of the Agreement is pending. Plaintiff's claim that the arbitration agreement is not involved because it is suing only under the 2008 Agreement fails. The broad arbitration clause in the Agreement reaches all aspects of the parties' relationship with respect to the manufacture, sale, and purchase of Lanky Links. Defendants' Motion to Compel Arbitration should be granted. However, the Court finds no reason to stay the proceeding pending arbitration. Dismissal without prejudice is appropriate in this case. Therefore, Defendants' Motion to Stay should be denied.

### Recommendation

The Court recommends that Defendant's Motion to Compel Arbitration be **GRANTED** and that the District Court order the parties to submit all claims in this action to final and binding arbitration under the current commercial rules and regulations of the American Arbitration Agreement in Indianapolis, Indiana. The Court further recommends that Defendants' Motion to Stay this action pending arbitration be **DENIED** and that this case be dismissed without prejudice.

**SO RECOMMENDED**, July 27, 2009.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

8